**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **OMNI HOTELS MANAGEMENT CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO: 05-1883** |
| **PHILIP BAYER,** ***ET AL.*** | **SECTION: "S" (5)** |

**ORDER AND REASONS**

**IT IS HEREBY ORDERED** that defendants' motion to dismiss (Document 15) is **DENIED.** Defendants' motion for summary judgment (Document 16) is **DENIED.** Defendants' motion to dismiss arbitration (Document 56) is **DENIED.** Defendants' motion to defer consideration of plaintiff's motion to compel arbitration (Document 44) is **DENIED**. Plaintiff's motion to compel arbitration against any person employed by Omni Hotels Management Corporation on or after May 1, 2003 is **GRANTED**. Plaintiff's motion for a preliminary injunction (1) barring these employee defendants from participating in a state suit against it, and (2) barring all defendants from acting as class representatives in the state suit for a class including such persons, (Document 33) is **GRANTED**.

**A. Background.**

Plaintiff Omni Hotels Management Corporation ("Omni") owns and operates hotels throughout North America, and manages the Omni Royal Crescent Hotel in New Orleans, Louisiana. Omni alleges that effective May 1, 2003, it adopted a mandatory arbitration program for resolving disputes covering all of its employees in North America. Omni alleges that under the arbitration program, virtually all employment related claims, including "personal injury and employment related tort claims," must be resolved through mandatory arbitration.

Omni alleges that on November 18, 2003, a putative class action was filed against Omni in the Civil District Court for the Parish of Orleans, State of Louisiana, entitled *Bayer, et al. v. OHMC Hotels Management Corp.*, No. 2003-17354. The state suit alleges that all past and present Omni employees have sustained personal injuries from exposure to mold at the Omni Royal Crescent Hotel during their employment. Omni alleges that the state lawsuit seeks certification of a class that may include approximately 300 present and former employees, of whom 78 are bound by the arbitration program. Omni seeks a declaratory judgment that, as to these 78 employees, "the Arbitration Agreement is valid and legally enforceable and that the Arbitration Agreement encompasses the claims asserted by [employee] Defendants in the State Lawsuit," including those employees who became employed after May 1, 2003 and including the five employee defendants who have refused to sign certain arbitration documents. Additionally, Omni seeks an injunction prohibiting certification of a class which includes any employees who are bound by arbitration.

**B. Analysis.**

**1. Employee defendants' motion to dismiss (Document 15).**

The employee defendants' motion argues that Omni's suit should be dismissed because (1) the court lacks subject matter jurisdiction, (2) Omni has failed to join indispensable parties, (3) Omni has not stated a claim against any defendant other than John Blancaneaux, William Couret, Robert Dabney, and Cynthia Daniels, and (4) the court should abstain in favor of the pending state court action.

**a. Subject matter jurisdiction/joinder of indispensable parties.**

Omni's complaint alleges that subject matter jurisdiction exists based on diversity of citizenship pursuant to 28 U.S.C. § 1332. It is undisputed that Omni is a citizen of Delaware and Texas, and that all named employee defendants are citizens of Louisiana. However, "[t]he inquiry into the existence of complete diversity requires considering the citizenship even of absent indispensable parties. The parties may not manufacture diversity jurisdiction by failing to join a non-diverse indispensable party." *Bankston v. Burch*, 27 F.3d 164, 168 (5th Cir. 1994); *see also Lincoln Property Co. v. Roche*, 126 S.Ct. 606, 615, 161 L.Ed.2d 189 (2005). Employee defendants argue that the court lacks subject matter jurisdiction because 535 Gravier, L.L.C. (the owner of the Omni Royal Crescent), OHMC Royal Crescent Corporation (a joint owner of 535 Gravier), Decatur Hotels, L.L.C. (a joint owner of 535 Gravier), William Sherrer (the general manager of the Omni Royal Crescent), and Gerard Vitrano (an Omni employee) are Louisiana citizens that are indispensable parties to the suit.

Rule 19 provides that a party is "indispensable" if:

> in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated

> that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

In determining whether a case should proceed without such a party, Rule 19 directs courts to examine four factors:

> The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Determining whether a party is indispensable under Rule 19 is a "highly practical, fact-based decision." *State Nat'l Ins. Co., Inc. v. Yates*, 391 F.3d 577, 578 (5th Cir. 2004). The "distilled essence" of the determination of whether an absent party is indispensable "is the attempt to balance the rights of all concerned," and "[t]he watchwords of Rule 19 are 'pragmatism' and 'practicality.'" *Schutten v. Shell Oil Co.*, 421 F.2d 869, 873-74 (5th Cir. 1970).

In *Snap-on Tools Corp. v. Mason*, 18 F.3d 1261 (5th Cir. 1994), plaintiff and four of its employees had been sued in state court by Mason and his wife for various state claims arising out of a dealer agreement the parties had executed. Because the dealer agreement required arbitration of all disputes, plaintiff instituted a federal court action to compel arbitration. The Masons moved to dismiss the federal court proceeding, arguing in part that the individual state court defendants were indispensable parties, and their presence in the suit destroyed diversity. The Fifth Circuit rejected the Masons' position:

> [The Masons] contend that the individual state defendants are indispensable parties to the within case under Fed. R. Civ. P. 19 and that the presence of all of them destroys diversity jurisdiction. Without diversity jurisdiction, the federal courts would have no subject matter jurisdiction over this case. According to the Masons, the co-defendants

> are indispensable because "any resolution by arbitration does not adjudicate all issues of law and fact between the Masons and all potential defendants."
>
> Under Rule 19(a)(1), joinder is requires if "in the person's absence complete relief cannot be accorded among those already parties." This is essentially what the Masons are contending. However, such a contention merely re-states the "piecemeal litigation" argument which the Supreme Court rejected in *Moses H. Cone.*

*Id.* at 1266-67.

The reasoning of *Snap-on Tools* has been employed by several later courts, all of which have held that absent parties to a federal court action to compel arbitration are not indispensable, regardless of whether they may have been sued in an earlier state proceeding and may be covered by the arbitration agreement at issue.[1] The court finds that 535 Gravier, OHMC Royal Crescent, Decatur Hotels, Sherrer, and Vitrano are not indispensable parties under Rule 19, and their citizenship is irrelevant to the issue of whether diversity jurisdiction exists. Accordingly, employee defendants' motion to dismiss for failure to join indispensable parties and for lack of subject matter jurisdiction is denied.

**b. Has Omni stated a claim against any defendant other than Blancaneaux, Couret, Dabney, and Daniels?**

Employee defendants argue that the claims asserted against any defendant other than Blancaneaux, Couret, Dabney, and Daniels should be dismissed because all other defendants either (1) refused to sign the arbitration documentation, (2) were not employed by Omni as of May 1, 2003, or (3) were never employed by Omni.

---

[1] *Paine Webber, Inc. v. Cohen*, 276 F.3d 197, 204 (6th Cir. 2001), *cert. denied*, 537 U.S. 815, 123 S.Ct. 83, 154 L.Ed.2d 19 (2002); *Blimpie Int'l, Inc. v. Butterworth*, 2005 WL 756218, at *5 (S.D. Ind. March 9, 2005); *Amsouth Bank v. Bowens*, 351 F. Supp. 2d 571, 573 (S.D. Miss. 2005); *Conseco Fin. Servicing Corp. v. Kolb*, 2002 WL 1013116, at *4 (N.D. Miss. April 15, 2002).

Under Rule 12(b)(6), employee defendants' motion should be denied "unless it appears beyond doubt that there is no set of facts on which plaintiff is entitled to relief." *Chiras v. Miller*, 2005 WL 3367698, at *4 (5th Cir. Dec. 12, 2005). Under this standard Omni has clearly stated a claim against the employee defendants who refused to sign the arbitration documentation, and employee defendants' motion to dismiss Omni's claim is denied. *See infra* Section 5. a.

With regard to those individuals who either were not employed by Omni on May 1, 2003 or who were never employed by Omni, the Complaint does not seek a judgment declaring that these individuals are bound by the arbitration documents, and names them only as class representatives in the state lawsuit. Omni is seeking a declaratory judgment that these individuals cannot be representatives of a class that includes persons who are bound to arbitration. Employee defendants' motion to dismiss Omni's claims against these individuals is denied.

**c. Abstention.**

Although federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, in "extraordinary and narrow" circumstances a federal court may abstain from exercising jurisdiction based on "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under *Colorado River* and its progeny, abstention may be appropriate if there are parallel state and federal proceedings, and there are "exceptional circumstances." Courts consider six factors in determining whether exceptional circumstances exist: (1) the assumption by either court of

jurisdiction over a *res*, (2) the relative inconvenience of the forums, (3) the avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained by the concurrent forums, (5) whether and to what extent federal law provides the rules of decision on the merits, and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Bank One, N.A. v. Boyd*, 288 F.3d 181, 185 (5th Cir. 2002). The Supreme Court has held that "no one factor is necessarily determinative," and the six factors are not a "mechanical checklist." But they must be applied "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

In analyzing the relevant *Colorado River* factors, the court notes that the suit was filed first. However, in *Moses H. Cone* the Supreme Court cautioned against "too mechanical a reading to the 'priority' element of the *Colorado River* balance" in arbitration cases, in part because of the "obvious reason" that an arbitration proceeding is typically filed last because the party filing the federal suit seeking an order compelling arbitration is usually prompted to do so by the filing of a state suit in contravention of an arbitration provision. *Moses H. Cone*, 460 U.S. at 20-21. *Moses H. Cone* directed that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id*. at 21. Although the state suit has been pending for over two years, there is no evidence in the record reflecting that substantial activity has taken place in that suit or that a substantial amount of discovery has been performed. The record reflects that the state court conducted a status conference on March 25, 2004. Defendant employees argued to this court on

July 1, 2005 that "the state proceedings are about to take off,"[2] but there is no evidence in the record supporting this argument or reflecting that substantial activity took place in the state suit after that date.

Employee defendants argue that there are a myriad of state law issues inherent in the state suit, and that this is a factor supporting abstention. In *Moses H. Cone*, the Supreme Court held that this is not the proper focus. Instead, the Federal Arbitration Act creates "a body of federal substantive law of arbitrability," and does not support surrendering jurisdiction:

> [W]e emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional circumstances," the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction. Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender, the presence of federal-law issues must always be a major consideration weighing against surrender.

*Id.* at 25-26 (citations omitted; italics in original); *see also Bank One*, 288 F.3d at 186 (holding in arbitration dispute that because questions of federal law "must be addressed with a healthy regard for the federal policy favoring arbitration," the substantive law prong of the *Colorado River* test "weighs in favor of the district court exercising jurisdiction.").

State courts have concurrent jurisdiction over arbitration disputes, and there is no indication the state court would fail to protect plaintiff's rights. However, "[a]lthough enforcement of the [FAA] is left in large part to the state courts, it nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate." *Bank One*, 288 F.3d at 186. This factor of the *Colorado River* analysis therefore does not support either party's argument. *See Safety National*, 214 F.3d at 566 (holding that "even where the state court can

---

[2] Document 15 at p. 21.

adequately protect all parties, this fact 'can only be a neutral factor or one that weighs against . . . abstention'").

In sum, none of the relevant *Colorado River* factors weighs in favor of abstention, and several affirmatively tilt the balance in favor of the exercise of jurisdiction. Accordingly, the court declines to surrender jurisdiction, and employee defendants' motion to dismiss based on *Colorado River* abstention is denied.

**2. Employee defendants' motion for summary judgment (Document 16).**

Employee defendants argue that summary judgment is appropriate under the doctrine of judicial estoppel because the allegations of Omni's Complaint conflict with representations Omni's counsel made to the state court. Under the doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). The purpose of judicial estoppel is to "protect the integrity of the judicial process." *Id.*

Employee defendants argue that Omni's counsel represented to the state court that any person who was not employed by Omni on May 1, 2003, as well as any person never employed by it, would not be bound to arbitration; yet, Omni is now alleging that those individuals are allegedly bound to arbitrate. As stated above, the Complaint alleges only that the class may not include persons who are bound to arbitrate. *See supra* Section 1. b. Because the allegations of Omni's Complaint do not conflict with the representations made by its counsel to the state court, judicial estoppel does not apply, and employee defendants' motion for summary judgment is

denied.

**3. Employee defendants' motion to dismiss arbitration (Document 56).**

Employee defendants argue that a final judgment issued in the state case *Dermody v. Omni Hotel Management Corporation*, No. 2003-15949(B)(15), provides a basis for dismissing Omni's suit. Employee defendants argue that the *Dermody* court found that Omni "had knowledge of the water intrusion problems as early as 1999 and failed to properly remedy them until 2003." Employee defendants claim that Omni is now collaterally estopped from relitigating this issue.

The Full Faith and Credit Statute provides that the judicial proceedings of a state court "shall have the same full faith and credit in every court within the United States and its Territories and Possession s as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The preclusive effect of a decision from a Louisiana state court is therefore governed by Louisiana preclusion law. *See Matter of Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996) ("[W]e must look to the state that rendered the judgment to determine whether the courts of that state would afford the judgement preclusive effect.").

LSA-R.S. 13:4231 provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> * * *
>
> > (3) A judgment in favor of either the plaintiff or the defendant is conclusive, **in any subsequent action between them**, with respect to any issue actually litigated and determined if its determination was essential to that judgment (emphasis added).

This statute "adopted estoppel by judgment which is limited to the parties to the first suit and to

issues which were 'actually litigated and determined' and whose determination was 'essential' to the judgment." 1A Frank L. Maraist, *Louisiana Civil Law Treatise Civil Procedure – Special Proceedings* § 4.3, at 61 (2005); *see also Alonzo v. State*, 884 So. 2d 634, 639 (La. App. 4th Cir. 2004) ("Under Louisiana law, res judicata does not apply where there is no identity of parties."). While Omni was a party to the *Dermody* litigation, defendant employees were not parties. Under LSA-R.S. 13:4231, the *Dermody* judgment does not have a preclusive effect in ligation between Omni and defendant employees. Accordingly, defendant employees' motion to dismiss is denied.

**4. Defendant employees' motion to defer (Document 44).**

Defendant employees argue that the court should defer consideration of Omni's motion to compel arbitration to allow them to conduct further discovery into their claims that their consent to be bound by arbitration was vitiated by fraud, duress, and error.

Under the Federal Arbitration Act, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. This provision calls "for an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone*, 460 U.S. at 22; *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (holding that the Federal Arbitration Act evinces an "unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.").

Defendant employees identify five depositions they wish to take, and references "a considerable amount of pending written discovery" that is being performed in the state litigation.

Defendant employees do not specifically demonstrate how this discovery is relevant to the arbitration issues. Additionally, this suit was filed on May 18, 2005, and the hearing into plaintiff's request for an order compelling arbitration did not occur until August 24, 2005. Defendant employees were free to pursue discovery prior to that time. On August 3, 2005, Omni's counsel (1) offered to make available four of the five individuals defendants now seek to depose, on dates ranging one to two weeks prior to the hearing on the motion to compel arbitration, and (2) offered to attempt to respond to written discovery within three to four days.[3] Additionally, employee defendants could have introduced any relevant evidence at the August 24, 2005 hearing, including their own testimony. Accordingly, defendant employees' motion to defer is denied.

**5. Omni's motion to compel arbitration and for a preliminary injunction (Document 33).**

To obtain a preliminary injunction, Omni must demonstrate a substantial likelihood of success on the merits, a substantial threat of irreparable injury if the injunction is not granted, that the threatened injury outweighs the threatened harm to the party who will be enjoined, and that granting the injunction will not disserve the public interest. *PCI Transportation, Inc. v. Fort Worth & Western R.R. Co.*, 418 F.3d 535 (5th Cir. 2005). Employee defendants contest only whether Omni has demonstrated a substantial likelihood of success on the merits.[4]

---

[3] *See* Document 46, Exhibit "A."

[4] The court has the power to enjoin participation in the state proceedings under the All Writs Act, 28 U.S.C. § 1651(a), and that the Anti-Injunction Act, 28 U.S.C. § 2283, does not prohibit such an injunction because it is issued "in aid of [the court's] jurisdiction, or to protect or effectuate its judgments."

**a. Are the defendant employees who did not sign the arbitration agreement bound by it?**

The arbitration program instituted by Omni is contained in the "Omni Hotels Dispute Resolution Program" (the "Program Document"), which was given to defendants on or about May 1, 2003. The Program Document states that Omni "has instituted a Dispute Resolution Program," and that "Omni Hotels and each of its associates have entered into a Mutual Agreement to Arbitrate Claims ('Agreement') as an efficient, impartial and cost-effective dispute resolution procedure." Under the heading "Claims Covered by this Agreement," the Program Document states that "the Company and the Associate consent to the resolution by arbitration of all claims or controversies involving Associate's application with, employment with, or termination from, the Company." The "Miscellaneous Terms" section of the Program Document, under the heading "Consideration," states:

> In addition to any consideration that may exist for the agreement to arbitrate, each party's mutual promise to resolve claims and controversies by arbitration in accordance with the provisions of this Program and the Agreement between the parties constitutes consideration for the Agreement to Arbitrate. Likewise, Associate's continued employment with Omni Hotels after receiving notice of the institution of this Program will also constitute consideration for the agreement to arbitrate.

In addition to the Program Document, Omni's employees were given a "Summary of Omni Arbitration Program" and a "Receipt of Arbitration Program and Acknowledgment," which states:

> Associate has received and reviewed the Omni Hotels Dispute Resolution and Agreement to Arbitrate, understands that the Dispute Resolution Program is mandatory and applicable to all associates as of May 1, 2003, and understands that a copy of the Acknowledgment will be placed in his/her file. Associate has had an opportunity to ask his/her supervisor and Omni Hotels' management any questions he/she may have concerning the Agreement.

Both the Summary and the Receipt contained signature lines for plaintiff's employees.

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *May v. Higbee Co.*, 372 F.3d 757, 763 (5th Cir. 2004). Because arbitration is a matter of contract, "the question of whether the parties formed a valid agreement to arbitrate is a matter governed by principles of state contract law." *Id.* at 764.

Omni argues that Texas law applies to the arbitration agreements, while employee defendants argue that Louisiana law should apply. This court applies the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 , 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Article 3537 of the Louisiana Civil Code provides the general choice of law rule for conventional obligations:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That sate is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in article 3515,[5] as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

The arbitration agreements were reached between a corporate citizen of Texas and Delaware and individual Louisiana citizens. They were executed in Louisiana and applied to disputes that arose in Louisiana arising out of Omni's business activities in this state. Although the

[5] Article 3515 refers to "the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state."

agreements are bilateral, in this case they would serve to divest Louisiana citizens of their right to petition Louisiana courts for a remedy for alleged personal injuries. The court finds that under Article 3537, Louisiana law governs the validity of the arbitration agreements.

In *May* the Fifth Circuit examined an arbitration program similar to that instituted by Omni. While the district court had held that an employee's signature on a form acknowledging receipt of a document outlining an arbitration program did not constitute acceptance of the program itself, the Fifth Circuit reversed, holding:

> By signing the Acknowledgment form, May indicated that she had received the Rules, but the signature did not all by itself bind May to the arbitration program. May became bound through her subsequent conduct, for the Acknowledgment Form unambiguously notified May that "[e]mployees are deemed to have agreed to the provisions of the Rules by virtue of . . . continuing employment [with Dillard's]." In other words, the Acknowledgment Form notified May of how she would manifest her assent to be bound. She undisputedly continued her employment at Dillard's, thus manifesting assent in the requested manner.
>
> * * *
>
> Continuing one's employment after receiving notice that continued employment will constitute assent is a recognized manner of forming a contract.

*Id.* at 764. In one later decision, the unpublished *Carson v. Higbee Co.*, 2005 WL 2404811 (5th Cir. Sept. 30, 2005),[6] the court extended its holding to an employee who refused to sign an arbitration acknowledgment form. The court held that the fact that the plaintiff did not sign the acknowledgment "was irrelevant to the court's decision in *May*: it was May's continued employment – not her signature – that manifested her assent to be bound by the arbitration policy. Thus, the factual difference between this case and *May* changes nothing."

---

[6] *Carson* is unpublished, but is nevertheless "persuasive" jurisprudence. *See* Fifth Circuit Rule 47.5.6.

*May* and *Carson* applied Mississippi law, but in *Marino v. Dillard's, Inc.*, 413 F.3d 530 (5th Cir. 2005), the court reached the same result under Louisiana law. *Marino* involved the same arbitration program at issue in *May*, and the court held that Article 1927 of the Louisiana Civil Code "makes clear that consent need not be written," and that continued employment after being advised that such employment would constitute assent to arbitrate constituted acceptance of an arbitration agreement. *Id.* at 532.

The Omni arbitration program is substantially similar to that at issue in *May* and *Marino*. The Program Document states unambiguously that Omni and its employees have agreed to arbitrate "all claims or controversies" arising out their employment, and further states that "continued employment" with the company " will also constitute consideration for the agreement to arbitrate."

Relying on cases applying other states' laws,[7] employee defendants argue that those of them that did not sign the Summary or Receipt did not agree to be bound by the arbitration program. The court finds that this argument is foreclosed by the holding of *Marino*. Taken together, the Program Document, Summary, and Receipt notify Omni's employees that it is their continued employment, not their signature on the Summary or Receipt, that serves as their consent to be bound by the arbitration program. The Receipt itself explicitly states that the signature on it only indicates that the employee has "received and reviewed" the arbitration program,

---

[7] *See Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756 (9th Cir. 1997) (involving waiver of right to arbitrate civil rights claims), *cert. denied*, 523 U.S. 1072, 118 S.Ct. 1511, 140 L.Ed.2d 665 (1998); *Patterson v. Red Lobster*, 81 F. Supp. 2d 681 (S.D. Miss. 1999) (applying Mississippi law); *Phillips v. Cigna Investments, Inc.*, 27 F. Supp. 2d 345 (D. Conn. 1998) (applying Connecticut law); *Leodori v. Cigna Corp.*, 814 A.2d 1098 (N.J. 2002) (applying New Jersey law), *cert. denied*, 540 U.S. 938, 124 S.Ct. 74, 157 L.Ed.2d 250 (2003).

"understands" that it is mandatory, "understands" that it will be placed in the employee's file, and has had the opportunity to ask questions about the program. Nowhere does the Receipt indicate that, without a signature, the employee will not be bound to the arbitration program. Jurisprudence in the Fifth Circuit is to the contrary.

**b. Is the consent of the employee defendants to the arbitration program vitiated by error, fraud, or duress?**

Article 1949 of the Louisiana Civil Code states that error "vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." The Louisiana Civil Code defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. Consent may also be vitiated by duress "of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation." *Id.* at art. 1959.

Employee defendants argue error vitiates their consent because they mistakenly believed only future conflicts between them and Omni would be subject to arbitration. Employee defendants argue fraud vitiates consent because Omni was aware of injury-causing mold problems prior to the institution of the arbitration program. Employee defendants argue duress vitiates their consent because Omni threatened to withhold their paychecks until they consented to arbitration. Employee defendants have not demonstrated requisite knowledge of Omni to establish error or fraud as vitiating consent. Employee defendants continuing to work after the alleged threats constituted assent to arbitration. Omni's motion to compel arbitration and for a preliminary injunction is granted.

**C. Conclusion.**

Defendants' motion to dismiss, motion for summary judgment, motion to dismiss arbitration, and motion to defer consideration of plaintiff's motion to compel arbitration are denied. Plaintiff's motion to compel arbitration against any person employed by Omni Hotels Management Corporation on or after May 1, 2003 is granted. Plaintiff's motion for a preliminary injunction (1) barring these employee defendants from participating in a state suit against it, and (2) barring all defendants from acting as class representatives in the state suit for a class including such persons, is granted.

New Orleans, Louisiana this 10th day of January, 2006.

**Mary Ann Vial Lemmon**
**United States District Judge**